### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| Jennifer Kirsch, | ) | |
| | ) | No. 11 C 9199 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Acting Commissioner of Social Security | ) | |
| Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Jennifer Kirsch seeks review of the final decision of the Defendant, the Commissioner of Social Security ("Commissioner"), denying her supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1382c(a), and disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. § 423(d)(2). Kirsch asks the Court to reverse the Commissioner's decision and award her benefits, or in the alternative, to remand the case for further proceedings. For the following reasons, Kirsch's motion for summary judgment is granted insofar as it requests a remand.

### Procedural History

Kirsch applied for SSI and DIB on May 11, 2007, alleging that she became disabled on September 14, 2004. Administrative Record ("A.R.") 62-65. The

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin—who became the Acting Commissioner of the Social Security Administration on February 14, 2013—is automatically substituted as the named defendant.

Commissioner denied her applications on August 30, 2007, *id.* at 67, and again on reconsideration on December 18, 2007, *id.* at 72, 76. Kirsch thereafter requested and received a hearing before an administrative law judge ("ALJ") on December 2, 2009. *Id.* at 130. On July 23, 2010, the ALJ issued a decision finding Kirsch not disabled. *Id.* at 9. The Appeals Council denied Kirsch's request for review on October 21, 2011, *id.* at 1, making the ALJ's decision the final decision of the Commissioner, *see Shauger v. Astrue,* 675 F.3d 690, 695 (7th Cir. 2012). Kirsch then initiated this civil action for judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g).

## Background

### A.    Medical Evidence

Kirsch, age 34, suffers from chronic low back pain, myofascial pain syndrome, and a right shoulder impairment. A.R. 11. Kirsch's pain originated with a shoulder injury on April 25, 2004, caused by carrying heavy electronic equipment during her employment as a customer service representative at Best Buy. *Id.* at 431. On September 20, 2004, Kirsch had surgery to repair a posterior superior labral tear. *Id.* at 255. Five months later, in February 2005, while undergoing physical therapy to treat the shoulder injury, she began experiencing back pain. *Id.* at 304.

From March 1, 2005, through October 26, 2006, Kirsch was a regular patient of Dr. Marie Kirincic. *Id.* at 1584-1655. Dr. Kirincic initially diagnosed Kirsch with lumbar strain, mild scoliosis, secondary myofascial pain syndrome, postural abnormalities, and muscle imbalances. *Id.* at 1655. An MRI conducted on March 11,

2005, revealed a mild broad-based disc protrusion at the L4-5 and L5-S1 levels, resulting in a mild flattening of the thecal sac at L4-5. *Id.* at 549. Several weeks later on March 22, 2005, Kirsch sought emergency treatment for severe back pain and pain extending into her legs. *Id.* at 737, 763. An MRI taken during her eight-day hospital stay revealed no abnormalities. *Id.* at 743. In the months that followed, objective testing revealed normal findings: a March 28, 2005 EMG revealed results within normal limits, *id.* at 896; an April 19, 2005 discogram of the lumbar spine proved negative, *see id.* at 559, 572; and an April 25, 2005 CT scan of the lumbar spine revealed normal results, *see id.* at 421, 561.

Dr. Kirincic recommended various treatments to Kirsch for pain relief. Following a referral to chiropractor Dr. Shawn Allan in May 2005, Kirsch pursued months of manual therapy, which somewhat reduced the pain in her legs and back. *See id.* at 572, 575, 581, 598. Kirsch also tried various injection therapies, none of which resolved her pain. She attempted an epidural steroid injection on July 7, 2005, *id.* at 584; a steroid joint injection on August 2, 2005, *id.* at 350; and a psoas and quad muscle injection on August 23, 2005, *id.* at 378. In November 2005, Kirsch attempted aquatic therapy, which provided some relief. *See id.* at 602. Although Kirsch pursued certain of Dr. Kirincic's recommended therapies, she declined others, including additional aquatic therapy, gym memberships, and a membership in the chronic pain program at the Rehabilitation Institute of Chicago ("RIC"). *Id.* at 584, 1587, 1599, 1620, 1626.

By February 2006, Dr. Kirincic concluded that no methods of alternative therapies were available to relieve Kirsch's pain. *Id.* at 620. Kirsch's remaining pain treatment therapy with Dr. Kirincic thus consisted of injections and a variety of prescription medicine. *E.g., id.* at 624, 637, 649, 661, 1591, 1596, 1610, 1616. Dr. Kirincic consistently diagnosed Kirsch with ongoing back pain of unknown origin. *E.g., id.* at 1617, 1626, 1630, 1633, 1634. A February 23, 2006 MRI revealed normal lumbar alignment, a very tiny small lateral disc protrusion at L3-4, a very minimal disc bulge at L4-5, and no spinal stenosis. *Id.* at 1470. In June, July, and August of 2006, as a result of her weakened leg strength and back pain, Kirsch fell down multiple times, causing injuries to her wrist, knee and face. *Id.* at 1594, 1599, 1608. Kirsch's final examination with Dr. Kirincic on October 17, 2006, revealed ongoing thoracolumbar discomfort with no known pathology. *Id.* at 1587. On October 26, 2006, Dr. Kirincic declined to prescribe any additional opiate-based drugs for pain relief. *Id.* at 1586.

On October 31, 2006, Kirsch saw Dr. Ning Sun who diagnosed her with low back pain, possible radiculopathy, and possible carpal tunnel syndrome. *Id.* at 932. Dr. Sun recommended further objective testing. *Id.* In November, Kirsch sought emergency treatment for her back pain and was diagnosed with myofascial pain syndrome, bilateral lower extremity radiculopathy, and lumbar degenerative disk disease. *Id.* at 933, 988. An MRI of the lumbar spine and an EEG taken during Kirsch's stay revealed normal findings. *Id.* at 998-99. An MRI of the cervical spine showed a minimal diffuse disc bulge at C4-C5. *Id.* at 1078.

The next year, beginning in January 2007, Kirsch began seeing Dr. Jeffrey Oken. *Id.* at 1538. After diagnosing Kirsch with lumbar hyperlordosis, low back pain, lumbar radicular pain, and myofascial pain, Dr. Oken recommended that Kirsch pursue similar pain therapies that Dr. Kirincic had recommended, which included prescription drugs, acupuncture, enrollment in a pain clinic, and injections. *E.g, id.* at 1518, 1520, 1522, 1540, 1567. But again, objective testing throughout 2007—a late January CT scan of Kirsch's lumbar spine and an MRI taken six months later in June—revealed unremarkable results. *Id.* at 1102, 1513. While under Dr. Oken's care, Kirsch experienced both improved and worsening pain. *E.g., id.* at 1525, 1921. Test results revealed tightness in Kirsch's hip flexors, full range of motion in her back, and tender palpation in her bilateral parsipinals. *Id.* at 1517, 1521, 1907, 1911, 1916, 1923.

The record includes two Physical Residual Functional Capacity ("RFC") Assessment forms from two state-agency physicians. Dr. Frank Jimenez completed his RFC for Kirsch on August 29, 2007. Dr. Jimenez opined that Kirsch can sit or stand for six hours in an eight-hour workday, occasionally lift 20 pounds, and frequently lift 10 pounds. *Id.* at 1543. Later that year, on December 7, 2007, Dr. Young-Ja Kim opined that Kirsch can stand at least two hours in an eight-hour workday, sit about six hours, and occasionally lift 10 pounds. *Id.* at 1571. Dr. Kim noted, however, that Kirsch could perform work activities within the limitations that he outlined in his RFC provided that she received adequate pain medication. *Id.* at 1577.

The record also includes various opinions from Kirsch's treating physicians. In a "progress note" dated February 9, 2009, Dr. Kirincic opined that Kirsch "has always been presenting and exaggerating her symptoms with minimal objective findings to support her ongoing disability." *Id.* at 1891. The doctor also noted that Kirsch was capable of sedentary or light work, but added that Kirsch would be unable to progress to that level of work without first enrolling in an active pain management program. *Id.* Dr. Oken opined in his physical RFC assessment, which he completed in August 2009, that Kirsch would be unable to sit or stand for more than two hours in an eight-hour workday. *Id.* at 1901. He also concluded that Kirsch should be limited to lifting no more than 10 pounds occasionally and that due to her ailments, she would likely miss more than four working days per month. *Id.* at 1901-02.

## B.     Kirsch's Hearing Testimony

At the hearing before the ALJ, Kirsch testified that on some days, the pain in her back and legs prevents her from getting out of bed. A.R. 48. According to Kirsch, this occurred about two to three days per week. *Id.* Kirsch then described her pain and how she had managed it. She testified that to relieve her pain, she received six injections in her back every month and took numerous pain medications that made her drowsy. *Id.* at 48-49. Kirsch rated her pain as an eight on a scale of one to 10. *Id.* at 48. She noted that she experienced difficulty sleeping because of the pain, stating that the pain limited her to sleeping about two hours per night. *Id.* at 52. Kirsch added that she had trouble walking and needed a cane to prevent her from

falling when walking. *Id.* at 52-54. She testified that her husband performed the household chores and that she could only lift up to five pounds. *Id.* at 51, 53. Kirsch indicated that she would need further surgery on her shoulder, but despite her overall ailments, she maintained that only her back injury prevented her from working. *Id.* at 50.

Kirsch concluded her testimony by mentioning her interest in a pain program that Dr. Oken recommended. *Id.* at 59. She said that she would like to enter a pain program similar to the RIC that was near her home, but stated that she needed financial assistance to pay for the program because worker's compensation and Medicaid would not. *Id.*

### C.    Vocational Expert's Testimony

Vocational expert Lee Knutson also testified at the hearing. A.R. 54. The ALJ asked Knutson to consider a hypothetical individual with Kirsch's background who was capable of performing sedentary work with the use of a cane and with occasional opportunities to stand and move every 30 minutes. *Id.* at 57-58. Knutson estimated that about 6,700 jobs exist in the regional economy that a hypothetical individual with these limitations could perform. *Id.* at 58. The ALJ then added to the characteristics of this hypothetical individual, asking Knutson to consider the additional limitation of needing to be absent from work two or more days per week due to pain complaints. *Id.* Knutson responded that this limitation would eliminate any available jobs for the hypothetical individual. *Id.*

## D.    The ALJ's Decision

After considering the proffered evidence, the ALJ concluded that Kirsch is

not disabled. A.R. 12. In evaluating Kirsch's claim, the ALJ conducted the standard

five-step sequential inquiry for determining disability, which required her to

analyze:

> (1) whether the claimant is currently [un]employed; (2) whether the
> claimant has a severe impairment; (3) whether the claimant's
> impairment meets or equals one of the impairments listed by the
> [Commissioner], *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the
> claimant can perform her past work; and (5) whether the claimant is
> capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (internal quotation marks

omitted). The ALJ made the following findings: (1) Kirsch had not engaged in

substantial gainful activity since the alleged onset date of her injury; (2) her low

back pain, myofascial pain syndrome, and right shoulder impairments were severe

impairments; (3) these severe impairments do not individually or collectively meet

or medically equal one of the impairments listed in 20 C.F.R. § 404, Subpt. P, App.

1; (4) Kirsch has the residual functional capacity to perform sedentary work;[2] and

(5) based on this RFC, while Kirsch could not perform her past relevant work, there

were a significant number of jobs in the national economy that she could perform.

A.R. 11-12, 17-18. Based on these findings, the ALJ concluded that Kirsch is not

disabled as defined by the Social Security Act, and denied her benefits.

---

[2] A claimant's residual functional capacity is the "most [she] can still do despite
[her] limitations." 20 C.F.R. § 404.1545(a)(1).

8

## Legal Standard

This Court confines its review to the reasons offered by the ALJ, *Steele v. Barnhart,* 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.,* 319 US 80, 93-95 (1943)), and examines whether the ALJ's decision is supported by substantial evidence, *Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Clifford,* 227 F.3d at 869 (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). This Court will "not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* A decision denying benefits need not "provide a complete written evaluation of every piece of testimony and evidence," but the ALJ in rendering that decision "must build a logical bridge from the evidence to [her] conclusion." *Pepper v. Colvin,* 712 F.3d 351, 362 (7th Cir. 2013) (internal quotation marks omitted).

## Analysis

### I.     The ALJ's Evaluation of the Opinions of Kirsch's Physicians

#### A.     Dr. Kirincic's Opinion

Kirsch makes two challenges to the ALJ's analysis of Dr. Kirincic's opinion. First, she argues that even though the ALJ assigned Dr. Kirincic's opinion controlling weight, the ALJ failed to analyze the factors for evaluating medical opinions set forth in 20 C.F.R. §§ 404.1527(c)(1)-(6) and 416.1527(c)(1)-(6). Second, Kirsch faults the ALJ for selectively considering Dr. Kirincic's opinion and improperly accepting part of that opinion without explaining her reasons for

rejecting another part of that opinion. Kirsch's first argument lacks merit, but her second one fares better.

Turning to the first challenge, Kirsch asserts that the ALJ erred by failing to address the factors listed in the Social Security regulations for evaluating medical opinions when giving Dr. Kirincic's opinion controlling weight. An ALJ gives a treating medical source opinion controlling weight if the opinion on the issues of the nature and severity of the claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The regulations further provide that "[u]nless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion." 20 C.F.R. §§ 404.1527(c); 416.1527(c).

Here, the ALJ gave Dr. Kirincic's opinion controlling weight, explaining that Dr. Kirincic was a treating source, that her opinion was supported by medical findings, and that it was consistent with the record. A.R. 16. Under the plain language of the regulations, once the ALJ assigned Dr. Kirincic's opinion controlling weight, it was no longer necessary for her to further analyze the factors in 20 C.F.R. § 404.1527(c)(1)-(6) to determine what weight to give that opinion. Accordingly, the ALJ did not err when she declined to include an additional analysis of the factors in the regulations in evaluating Dr. Kirincic's opinion.

Kirsch next argues that the ALJ selectively considered Dr. Kirincic's medical opinion. According to Kirsch, the ALJ accepted part of Dr. Kirincic's opinion but improperly disregarded another part of that opinion. While the final determination of disability is ultimately left to the ALJ, not a medical source, *Clifford*, 227 F.3d at 870, "opinions from any medical source about issues reserved to the Commissioner must never be ignored," SSR 96-5p, 1996 WL 374183, at *3 (July 2, 1996).

A review of the ALJ's decision demonstrates that the ALJ erred in her analysis of Dr. Kirincic's opinion. The ALJ gave controlling weight to Dr. Kirincic's opinion that Kirsch was capable of at least sedentary work, but rejected the doctor's qualification that Kirsch would be unable to return to work without participation in an active pain management program. A.R. 16, 1891. Dr. Kirincic's final progress note regarding her treatment of Kirsch provided:

> My opinion regarding Mrs. Kirsch's condition, the patient has been always presenting and exaggerating her symptoms with minimal objective findings to support her ongoing disability. I certainly believe the patient would be capable of at least sedentary or light duty but was unable to progress the patient into return to work, and any attempt of easing her pain has been only temporary. I believe that without an active program in an interdisciplinary pain program like at RIC or Marianjoy she will not be able to progress into return to work.

*Id.* at 1891. The ALJ credited Dr. Kirincic's opinion, noting:

> I give controlling weight to the treating physician's (Dr. Kirincic) opinion that [Kirsch] can do at least sedentary or light work. Dr. Kirincic is an orthopedist and her conclusion is well supported by the medical findings in the record . . . and consistent with the record as a whole.

*Id.* at 16. The ALJ then went on to reject the latter part of Dr. Kirincic's opinion, noting that "[t]reating physician Kirincic concluded that without an active pain

11

program she would not be able to progress to return to work." *Id.* The ALJ concluded that such a conclusion was similar to an opinion that a claimant is "disabled" or "unable to work." *Id.* In the ALJ's view, Dr. Kirincic's opinion regarding Kirsch's need for a pain program was not a medical opinion but an "administrative finding[ ] dispositive of a case," and consequently was an issue reserved to the Commissioner. *Id.* at 16-17 (citing 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2)).

The ALJ's rejection of this part of Dr. Kirincic's opinion without further explanation was erroneous. The ALJ provided no reason for granting controlling weight to one part of Kirincic's opinion (Kirsch is capable of sedentary work) while rejecting a condition for that opinion (enrollment in a pain management program was necessary before Kirsch could return to work). The ALJ erroneously limited the discussion to the evidence that supported her conclusion, *see Smith v. Apfel*, 231 F.3d 433, 438 (7th Cir. 2000), and her failure to minimally explain her dismissal of that critical piece of Dr. Kirincic's opinion leaves the Court without the necessary logical bridge connecting the ALJ's conclusion with the evidence. *See Pepper*, 712 F.3d at 362; *Bjornson v. Astrue*, 671 F.3d 640, 647-49 (7th Cir. 2012). On remand, the ALJ might find, as she did initially, that Kirsch is capable of performing sedentary work with certain restrictions. But before reaching this conclusion, the regulations require that she must minimally account for the remaining part of Dr. Kirincic's opinion that she originally disregarded. The ALJ's error in this regard was not harmless.

## B.    Dr. Oken's Opinion

Kirsch further challenges the ALJ's analysis of Dr. Oken's opinion, arguing that the ALJ (1) failed to apply the factors set forth in 20 C.F.R. §§ 404.1527(c), 416.1527(c)—factors, she contends, the ALJ should have considered after declining to give Dr. Oken's medical opinion controlling weight—and (2) further failed to fully consider the entirety of Dr. Oken's opinion and explain why she discounted portions of it.

The ALJ gave "little weight" to Dr. Oken's opinion that Kirsch could perform less than sedentary work because she found this opinion "not supported by the minimal examination findings in his own treatment notes" and "inconsistent with the medical record." A.R. 16. The ALJ further noted Dr. Oken's opinion that Kirsch "was not capable of performing any work activities," but discounted that conclusion because it was an issued reserved for the Commissioner, not a "medical opinion." *Id.* at 16-17. This was the extent of the ALJ's analysis of Dr. Oken's medical opinion and falls far short of the minimal justification required to sustain a decision rejecting a treating physician's opinion.

Kirsch first claims that even though the ALJ declined to afford Dr. Oken's opinion controlling weight, the ALJ was still required to apply the checklist of factors in 20 C.F.R. §§ 404.1527(c), 416.1527(c), and explain what weight, if any, she gave to Dr. Oken's opinion in light of those factors. The Court agrees. A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is supported by medical findings and consistent

with substantial evidence in the record. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *see also Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (stating ALJ may discount treating physician's medical opinion if it "is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as [she] minimally articulates [her] reasons for crediting or rejecting evidence of disability") (internal quotation marks omitted). "A decision to deny a physician's opinion controlling weight does not prevent the ALJ from considering it, however, and the ALJ may still look to the opinion after opting to afford it less evidentiary weight." *Elder*, 529 F.3d at 415. If an ALJ declines to give a treating physician's opinion controlling weight, the regulations require the ALJ to consider a number of factors to determine what weight, if any, to afford the treating physician's opinion. *Id.* These factors include: the length, nature, and extent of the treatment relationship; the frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); *see also* 20 C.F.R. § 404.1527(c)(2). If, after considering these factors, the ALJ discounts the physician's opinion, that decision will stand so long as the ALJ "minimally articulate[d]" her reasons for doing so. *Elder*, 529 F.3d at 415 (internal quotation marks omitted).

The Seventh Circuit has consistently criticized ALJs for failing to analyze the factors set forth in the regulations when deciding what weight to afford a treating physician's opinion after they have denied that opinion controlling weight. *See*

*Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010); *see also Larson*, 615 F.3d at 751 (criticizing ALJ's decision where it "said nothing regarding this required checklist of factors"); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (stating when treating physician's opinion is not given controlling weight "the checklist comes into play").

Here, after the ALJ declined to give Dr. Oken's opinion controlling weight, she was then required to consider the aforementioned factors in deciding what evidentiary weight to afford Dr. Oken's opinion. The ALJ failed to do this and omitted from her analysis any discussion of the length, nature, and extent of Dr. Oken's treatment relationship with Kirsch. A.R. 16. Nor did the ALJ make any reference to Dr. Oken's specialty or the types of tests he performed while Kirsch was under his care. *Id.* The ALJ simply stated that Dr. Oken's opinion was inconsistent with the medical record and unsupported by his own minimal examination findings without ever explaining how or why this was the case. *See id.* Conclusory statements like these have warranted remand for further explanation, and the same result is warranted here. *Clifford*, 227 F.3d at 871; *see also Boiles v. Barnhart*, 395 F.3d 421, 426 (7th Cir. 2005). The lack of explanation required moreover is even more problematic given that consideration of several of the factors supports the conclusion that Dr. Oken's opinion should be given greater weight. For example, between January 16, 2007, and October 2, 2009, Dr. Oken treated Kirsch 21 times, each time providing detailed and extensive findings in his evaluations. A.R. 1517-40, 1907-24. The doctor's findings also remained relatively consistent throughout

the course of his treatment. *Id.* at 1520, 1540, 1911-12, 1916, 1921-22. Proper consideration of these factors may have caused the ALJ to afford greater weight to Dr. Oken's opinion.

Kirsch further contends that the ALJ's analysis of Dr. Oken's opinion was deficient because the ALJ failed to consider the entirety of his opinion and explain why she rejected portions of it. Dr. Oken provided an RFC assessment of Kirsch, opining that she would not be capable of low-stress jobs and that she could only sit or stand for 10 to 15 minutes at a time for a maximum of two hours a day. *Id.* at 1900-01. Dr. Oken also noted that Kirsch required a job that would allow her to shift positions at will and take numerous unscheduled breaks during the workday, and further opined that due to her impairments, she would be absent from work more than four days per month. *Id.* at 1901-02. The ALJ, however, failed to explain why she rejected these portions of Dr. Oken's opinion. Indeed, she failed to include any discussion of these restrictions in her decision at all. *See* SSR 96-5p, 1996 WL 374183, at *4 (noting that "medical source statements may actually comprise separate medical opinions regarding diverse physical and mental functions" and that "it may be necessary to decide whether to adopt or not adopt each one").

The ALJ provided two reasons for rejecting Dr. Oken's opinion that Kirsch was unable to perform sedentary work it was: (1) inconsistent with his minimal examination findings; and (2) unsupported by the medical record. A.R. 16. The ALJ then further rejected Dr. Oken's additional opinion that Kirsch was not capable of performing any work activities because that conclusion was an administrative

finding reserved to the Commissioner. *Id.* at 16-17. Again, however, the ALJ failed to minimally articulate, how she arrived at these conclusions as she was required to do. While the ALJ correctly noted that Dr. Oken's opinion that Kirsch was not capable of performing any work activities was ultimately an issue reserved to the Commissioner, *id.* at 16-17 (citing 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2)), such a conclusion did not relieve the ALJ from discharging her responsibility to minimally articulate the reasons she was rejecting the opinion of a treating physician.[3] In sum, while the ALJ ultimately may have been correct in her conclusions regarding Dr. Oken's opinion, she failed to minimally articulate her reasons for discounting it. The ALJ's failures in this regard warrants remand.

## II.    The ALJ's Credibility Determination

Kirsch challenges the ALJ's adverse credibility determination of her as deficient on several grounds. She argues that the ALJ: (1) failed to properly consider her treatment history and how that affected her allegations of pain; (2) improperly concluded that her pain allegations were not fully supported by the objective

---

[3] In finding the ALJ's rejection of Dr. Oken's opinion to be wanting, the Court observes that the ALJ discounted Dr. Oken's opinion on the basis that his examination findings were minimal. But a review of the record in fact indicates to the contrary—Dr. Oken's treatment and examination notes were fairly extensive and detailed. A.R. 1517-40, 1907-24. The ALJ rejected Dr. Oken's opinion on the additional basis that it was unsupported by the medical evidence. But a review of the record appears that conclusion to not be entirely accurate. Dr. Oken repeatedly cited Kirsch's tenderness and pain to palpation, tenderness to myofascial bands and paraspinals, and tightness in her hip flexors, *e.g.*, *id.* at 1911, 1916, 1921, and also routinely reported his diagnoses of myofascial pain syndrome, lower back pain, and radiculopathy, *e.g.*, *id.* at 1520, 1540, 1912, 1922. These results appear consistent with similar results from Kirsch's stay at Hinsdale Hospital on November 2, 2006. *Id.* at 988 (noting findings of myofascial pain syndrome, bilateral lower extremity radiculopathy, and lumbar degenerative disk disease).

medical evidence; and (3) failed to consider the side effects of her medications when determining her credibility. Kirsch also contends that the ALJ improperly found that her testimony regarding the effects of her impairments on her daily living activities was inconsistent with the record. And lastly, Kirsch finds fault with the ALJ's use of meaningless boilerplate language in evaluating Kirsch's credibility.

Beginning with Kirsch's challenge to the ALJ's use of the constantly-criticized boilerplate language—conclusory statements that an ALJ then fails to link with objective medical evidence—the Seventh Circuit has made clear that an ALJ's use of the objectionable language does not amount to reversible error if she "otherwise points to information that justifies [her] credibility determination." *Pepper*, 712 F.3d at 367-68. Here, the Court concludes that the ALJ provided other sufficient reasons, grounded in evidence, to explain her credibility determination. *See Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). Because the ALJ did that, remand is not warranted simply on the basis that the ALJ used the suspect boilerplate language.

This Court affords an ALJ's credibility finding "considerable deference," overturning it only if "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). The reason for such "special deference" is because the ALJ "is in the best position to see and hear the witness and determine credibility." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000); *see also Briscoe v Barnhart*, 425 F.3d 345, 354 (7th Cir. 2005). In the end, however, the ALJ must connect her credibility determination to the record by an "accurate and logical bridge." *Castile v. Astrue*,

617 F.3d 923, 929 (7th Cir. 2010) (internal quotation marks omitted). To build that logical bridge for a credibility determination regarding pain, the ALJ must consider not only the objective medical evidence, but also the claimant's daily activities; the duration, frequency, and intensity of pain; any precipitating and aggravating factors; the dosage, effectiveness, and side effects of medication; and functional restrictions. *See* SSR 96–7p, 1996 WL 374186, at *3 (July 2, 1996); *accord Villano v. Astrue*, 556 F.3d 558, 562-63 (7th Cir. 2009) (requiring analysis of factors listed in SSR 96–7p as part of building logical bridge for credibility determinations). The Social Security regulations require an ALJ's credibility determination to "contain specific reasons for the finding on credibility, supported by evidence in the case record." SSR 96-7p, 1996 WL 374186, at *2, 4; *see also Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) ("[T]he ALJ must consider the claimant's level of pain, medication, treatment, daily activities, and limitations, 20 C.F.R. § 404.1529(c), and must justify the credibility finding with specific reasons supported by the record."); *Villano*, 556 F.3d at 562-63.

Kirsch makes four challenges to the ALJ's credibility finding. Two are successful; two are not. The two shortcomings Kirsch identifies, which each point to the ALJ's failure to address certain factors identified in SSR 96-7p, are sufficient to warrant remand.

Kirsch first takes issue with the ALJ's failure to properly consider her lengthy treatment history and how that history affected her allegations of pain. Specifically, Kirsch points to the ALJ's failure to consider her significant course of

treatment throughout the years, which included physical therapy; multiple, different pain medications; aqua therapy; chiropractic treatment; and cortisone injections.

SSR 96-7p provides that "a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain . . . for the purposes of judging the credibility of the individual's statements." 1996 WL 374186, at *7. "Persistent attempts by the individual to obtain relief of pain . . . such as by increasing medications, trials of a variety of treatment modalities . . . or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual." *Id.*

The record here is replete with documentary evidence demonstrating that since the inception of Kirsch's back injury, Kirsch pursued the aforementioned avenues to treat her back injury and its accompanying pain, but none were successful in alleviating her problems. The ALJ however failed to discuss any of these modes of treatment in her credibility determination. To be sure, in evaluating Kirsch's credibility, the ALJ recounted Kirsch's objective medical history, crediting the medical evidence indicating that Kirsch was experiencing few functional limitations and that her condition was improving. But there is no indication in the ALJ's opinion—and the Commissioner points to none—that the ALJ considered the other alternative courses of treatment that Kirsch pursued to alleviate her pain. By

failing to do so, the Court is left to wonder why the ALJ discounted Kirsch's numerous trips from 2004 to 2009 to her doctors, emergency rooms, clinics, and physical therapy. Presumably, the ALJ believed that despite the treatments that she attempted, Kirsch was simply exaggerating her pain symptoms. But "[n]othing in Social Security Ruling 96-7p suggests that the reasons for a credibility finding may be implied." *Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003). Accordingly, the Court finds that remand is warranted so that the ALJ may address this omission from her decision.

Kirsch also faults the ALJ for failing to consider the side effects of her medications when assessing her credibility. The record evidence and Kirsch's testimony demonstrate that the prescribed medication she takes makes her drowsy, which contributes to Kirsch's inability to function. A.R. 49, 228. The Social Security regulations require that an ALJ consider the side effects of a claimant's medication, but the Commissioner points to nowhere in the ALJ's opinion where the ALJ complied with this requirement. *See* SSR 96–7p, 1996 WL 374186, at *3; *accord Villano*, 556 F.3d at 562-63. Accordingly, the Court instructs the ALJ to consider this factor when assessing Kirsch's credibility on remand.

Kirsch finds less success with her next two complaints about the ALJ's credibility finding. Kirsch argues that the ALJ improperly concluded that her pain allegations were not fully supported by the objective medical evidence. An ALJ may not disregard a claimant's allegations about the intensity and persistence of pain solely because there is no objective medical evidence to support it. SSR 96-7p, 1996

WL 374186, at *6. The ALJ did not do that here. To be sure, the ALJ pointed to specific objective evidence that the ALJ believed demonstrated that Kirsch's allegations of pain were not credible. According to the ALJ, the medical record from 2004 to 2009 demonstrated that Kirsch's condition had improved. Had the ALJ stopped there and determined that Kirsch's allegations of pain were not credible, Kirsch would be on better footing with this argument. But the ALJ went on to also consider: (1) the inconsistencies between Kirsch's statements and the record; (2) Kirsch's admitted activities; (3) Dr. Kirincic's observation that Kirsch had been presenting and exaggerating her symptoms; and (4) Kirsch's statements that she had not complied with her prescribed treatment or medications and that she was too busy for a pain program. A.R. 14-16. The ALJ also found significant that Kirsch maintained that the treatment for her pain had not helped to alleviate the pain, but the medical evidence had demonstrated her physical condition had improved throughout the years. *Id.*

Kirsch points to other objective evidence in the record that she alleges substantiates her complaints of pain. But much of the medical evidence Kirsch cites indicate fairly unremarkable results. Accordingly, the Court declines to fault the ALJ for noting that Kirsch's pain allegations were not fully supported by the objective medical evidence where the ALJ's opinion demonstrated that she considered a number of other factors in evaluating Kirsch's credibility in addition to the failure of the medical evidence to corroborate Kirsch's claims of pain.

Kirsch finally contends the ALJ improperly found that her testimony regarding the effects of her impairments on her daily living activities was inconsistent with the record.[4] In evaluating Kirsch's credibility, the ALJ considered Kirsch's subjective complaints and limitations and observed inconsistencies between Kirsch's allegations and the record. Among the ALJ's observed inconsistences: (1) Kirsch alleged that she did not have the strength to get out of bed, but there was no indication in the record that she was bed-ridden; (2) Kirsch testified that her husband provides 24-hour care for her grandfather and cares for her children, but documentary evidence from Kirsch indicated that she cared for her grandfather's house and performed child-care duties; (3) documentary evidence that Kirsch submitted indicated that she could not perform chores while other documents suggested she could cook or clean on good days; (4) Kirsch testified that she had not worked since 2004, but an earnings record showed otherwise; (5) Kirsch alleged that her husband lifted and carried everything and she could not lift more than one to two pounds, but she also described in the documentary record how she was able to lift her left arm. A.R. 14. The ALJ then went on her in opinion to note that Kirsch's "description of her daily activities is inconsistent with her claim of total disability at all exertional levels." *Id.* at 16.

---

[4] Kirsch notes that the ALJ failed to take into account the fluctuating nature of Kirsch's pain on "good" and "bad" days. Given the remand for further development of the ALJ's opinion on Kirsch's credibility, the Court recommends that the ALJ further expand on her credibility determination to include an analysis of the fluctuating nature of Kirsch's pain between "good days" and "bad days."

Kirsch correctly notes that an ALJ should not translate an ability to perform daily activities, like caring for family members, into an ability to work full-time. *See Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). But that is not what the ALJ did. The Seventh Circuit has determined that as part of a credibility determination, it is appropriate for an ALJ to consider a claimant's daily activities, *id.* (citing SSR 96-7p), and inconsistencies regarding those daily activities, *see* SSR 96-7p, 1996 WL 374186, at *5 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."). An examination of the ALJ's credibility determination demonstrates that the ALJ was not, as Kirsch asserts, equating Kirsch's ability to perform a limited range of daily activities with an ability to work full-time. Rather, the ALJ was simply pointing to the inconsistencies between Kirsch's description of her daily activities and the evidence in the record as a reason that the ALJ found Kirsch's testimony regarding her limitations to be incredible.

In sum, while the ALJ's credibility determination was not as deficient as Kirsch claims, there are shortcomings in that determination that ultimately warrant remand so that the ALJ may build the required logical bridge from the record to her credibility determination.

## III. The ALJ's Development Of The Record And Her Analysis Of Kirsch's Carpal Tunnel Syndrome

Kirsch finally argues that the ALJ failed to develop the record regarding her hand and arm impairments—namely her carpal tunnel syndrome—and also failed to adequately analyze those impairments in her opinion. Kirsch contends that

because she was unrepresented at the hearing, the ALJ had an added responsibility to probe further into her hand limitations and the effect of those limitations on her ability to work.

It is well-settled that the ALJ has an obligation to develop a full and fair record; such a duty is heightened if a claimant is unrepresented. *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991). In discharging this duty, "[t]he ALJ does not act as counsel for claimant, but as an examiner who thoroughly develops the facts." *Id.* at 586.

At the hearing, the ALJ asked about Kirsch's work history, pain, abilities, daily activities, and past injuries. A.R. 40-54. Kirsch never brought to the ALJ's attention any problems concerning her wrist. Rather, she only discussed her back and shoulder issues. *Id.* at 48-54. Indeed, on two separate occasions during the hearing, the ALJ questioned Kirsch about issues affecting her ability to work, and she declined to mention her wrist:

| Q [ALJ]: | So let me ask you this. If you could get rid of your back pain and you just had the shoulder would that, that effect, would that prevent you from working? |
|---|---|
| A [Kirsch]: | No. |
| Q: | Okay. You can go back to work -- |
| A: | Yes. |
| Q: | -- with that? |
| A: | Yes. I wish I could. |

**\*\*\*\***

25

> Q:     Besides your back pain is there anything else that's preventing you from working?
>
> A:     Just the leg weakness and numbness.

*Id.* at 50, 53. Moreover, both at the close of her testimony and at the close of the hearing, the ALJ gave Kirsch two additional opportunities to supplement her testimony with any other relevant information. *Id.* at 54, 59-60. Kirsch did not mention any problems with her wrist at these times. *Id.*[5]

Kirsch attempts to highlight certain parts of the record demonstrating potential carpal tunnel issues and other arm and hand limitations, arguing that the ALJ failed to consider them in her opinion. But these mentions are few and far between. *Id.* at 932 (Dr. Sun's October 31, 2006 report mentioning "[r]ule out radiculopathy and Carpal Tunnel Syndrome"), 1423 (Dr. Sun's November 2, 2006 brief mention of possible carpal tunnel syndrome diagnosis), 1556, 1558 (another Dr. Sun report in same timeframe).[6] And the ALJ need not address every piece of evidence in order to develop a full and fair record. *See, e.g., Villano*, 556 F.3d at 562 ("An ALJ is not required to discuss every piece of evidence."); *Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002) ("The ALJ's failure to address these specific findings, however, does not render his decision unsupported by substantial evidence because

---

[5]  Notably, in a letter to the Appeals Council following the ALJ's decision, Kirsch indicated, consistent with her omissions at the hearing, that she did not find her hand limitations or carpal tunnel to impair her ability to work: "[The ALJ] also writes that I was diagnosed with Carpal Tunnel, yet I've NEVER had a doctor even bring anything of the sort to my attention. This made me feel as if the Judge maybe confused someone else's case with my case." A.R. 147 (capitalization in original).

[6]  Kirsch also relies on a December 18, 2008 report by Dr. Oken, *id.* at 1919-21, but this report appears to contain no mention of wrist ailments.

an ALJ need not address every piece of evidence in his decision."). Here, the focus of the medical reports, Kirsch's testimony, and her application for disability were Kirsch's back and shoulder pain, *not* any hand or arm limitations. A review of the record confirms this. Accordingly, the Court concludes that the ALJ developed a full and fair record and did not err by not discussing Kirsch's hand limitations in her opinion.

## Conclusion

For the foregoing reasons, Kirsch's motion for summary judgment, R. 14, is granted insofar as it requests a remand, and the case is remanded to the ALJ for further proceedings consistent with this opinion.

ENTERED:

Thomas M. Durkin
United States District Judge

Dated: October 2, 2013