| | | |
|---|---|---|
| Jennifer Kirsch, | ) | |
| | ) | No. 11 C 9199 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Acting Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jennifer Kirsch ("Kirsch") asks the Court to grant her an award for attorney's fees under the Equal Access to Justice Act ("EAJA"), 20 U.S.C. § 2412, in the amount of $10,719.37 and additional costs of $15.00. R. 32 at 8-9. Kirsch alleges that the position taken by the Defendant, the Commissioner of Social Security ("Commissioner"), denying her supplemental security income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. § 1382c(a), and disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. § 423(d)(2), was not "substantially justified." R. 25. Based on this Court's October 2, 2013 order granting Kirsch's motion for summary judgment and remanding the Commissioner's decision in part, Kirsch alleges she is entitled to attorney's fees pursuant to the EAJA because she is the prevailing party. R. 25 at 1. For the following reasons, Kirsch's application for attorney's fees of $10,719.37 and additional costs of $15.00 is granted.

**BACKGROUND**

On May 11, 2007, Kirsch applied for SSI and DIB, claiming she became disabled on September 14, 2004. R. 24 at 1. On August 30, 2007, the Commissioner denied her applications and again denied them on reconsideration on December 18, 2007. *Id.* at 2. On December 2, 2009, Kirsch requested and received a hearing before an administrative law judge ("ALJ"). *Id.* On July 23, 2010, the ALJ issued a decision finding Kirsch not disabled. *Id.* On October 21, 2011, the Appeals Council denied Kirch's request for review, *id.*, making the ALJ's decision the final decision of the Commissioner. *See Shauger v. Astrue,* 675 F.3d 690, 695 (7th Cir. 2012).

On December 27, 2011, Kirsch initiated a civil action before this Court for judicial review of the Commissioner's final decision. R. 1. On April 3, 2012, Kirsch filed a motion for summary judgment, which the Court granted on October 2, 2013, in part remanding the case to the ALJ. R. 14; R. 24. Specifically, the Court found that the ALJ erred in its analysis of the opinions of Dr. Kirinic and Dr. Oken, Kirsch's treating physicians. R. 24 at 11-17. The Court found that the ALJ failed to explain why parts of these opinions were rejected, and failed to apply the factors enumerated in 20 C.F.R. § 404.1527(c) and § 416.1527(c) in deciding what evidentiary weight to give to Dr. Oken's and Dr. Kirinic's opinions.[1] R. 24 at 11-17. Additionally, the Court found that the ALJ failed to consider Kirsch's treatment

---

[1] Kirsch was a regular patient of Dr. Kirinic from March 1, 2005 through October 26, 2006. R. 24 at 2. Kirsch has been a regular patient of Dr. Oken since January 2007. *Id.* at 5. A more detailed background of Kirsch's injuries and Dr. Kirinic's and Dr. Oken's treatment of Kirsch appears in the Court's October 2, 2013 order. *Id.* at 2-8.

history, allegations of pain, and the side effects of her medications when assessing her credibility. R. 24 at 19-21.

Kirsch's motion for an award of attorney's fees as the prevailing party in the amount of $10,719.37 and additional costs of $15.00, R. 32, is currently pending before the Court.

## LEGAL STANDARD

Under the EAJA, a successful litigant against the federal government is entitled to recover reasonable attorney's fees where: (1) the plaintiff is the "prevailing party"; (2) the government's position was not "substantially justified" either in pre-litigation or litigation conduct; (3) no "special circumstances" exist which would make the award unjust; and (4) the prevailing party timely filed an application for fees within 30 days of final judgment which is supported by an itemized statement. 28 U.S.C. §§ 2412(d)(1)(A),(B); (d)(2)(A).

By virtue of the remand in this case, Kirsch is the prevailing party. *Shalala v. Schaefer*, 509 U.S. 292, 302 (1993). There are no "special circumstances" alleged, and Kirsch's application was timely filed and supported by an itemized statement. R. 25-3 at 1, 2. The only questions in dispute are (1) whether the Commissioner's position denying Kirsch's application for SSI and DIB was "substantially justified" and, (2) if the Commissioner's position was not substantially justified, whether the amount of attorney's fees requested by Kirsch's attorney is reasonable. R. 25 at 1, 4-5; R. 28 at 1, 4.

# ANALYSIS

## I.    Substantial Justification

The Seventh Circuit has set forth a three-part standard for reviewing EAJA petitions. *U.S. v. Hallmark Constr. Co.,* 200 F.3d 1076, 1080 (7th Cir. 2000). It requires the government to show that its position was grounded in: (1) a reasonable basis for the facts alleged; (2) a reasonable basis in law for the theory propounded; and (3) a reasonable connection between the facts alleged and the legal theory propounded.[2] *Id.* Under the EAJA, the Commissioner bears the burden of proving that its position was substantially justified. *Id.* at 1079. The party seeking an award of attorney's fees bears the burden of proving that the fees sought are reasonable. *Crawford v. Barnhart*, 2002 WL 31049851, at *1 (N.D. Ill. Sept. 12, 2002). A prevailing party may obtain attorney's fees only if the government's position was not "substantially justified." 28 U.S.C. § 2412(d)(1)(A).

---

[2] Kirsch disputes the Commissioner's proposed standard of review when determining whether the Commissioner's position was substantially justified. R. 32 at 1. The Commissioner contends the test for substantial justification is "whether the agency had a rational ground for thinking it had a rational ground for its action." R. 28 at 3 (quoting *Kolman v. Shalala*, 39 F.3d 173, 177 (7th Cir. 1994)). The Commissioner also argues that a position is substantially justified when it is "justified to a degree that could satisfy a reasonable person." R. 28 at 3 (citing *Pierce v. Underwood,* 487 U.S. 552, 565-66 (1988)). Kirsch claims that the standard of review when determining whether the Commissioner's position was substantially justified is the three-part standard cited in *Hallmark*, set forth above. R. 32 at 1-2. The Commissioner's and Kirsch's proposed standards of review are both correct. As the Supreme Court stated in *Pierce*, a position is substantially justified if it is established to a "degree that could satisfy a reasonable person. That is no different from [a] 'reasonable basis in both the law and fact." 487 U.S. at 565. Thus, the Commissioner and Kirsch have articulated the same standard but simply in different ways.

In making this determination, it is appropriate for the district court to consider the government's litigating position as well as its pre-litigation conduct— the action or inaction that gave rise to the litigation. *Marcus v. Shalala*, 17 F.3d 1033, 1036 (7th Cir. 1994). In doing so, the court must make a "global assessment" of the entire civil action that examines not only whether the Commissioner was justified at the beginning or the end of continuing proceedings, but also whether the Commissioner was justified at each stage. *Hallmark*, 200 F.3d at 1081. Because the Commissioner may have had "substantial justification" for taking or defending a position that was ultimately rejected, remand of the ALJ's opinion for lack of substantial evidence is not conclusive evidence that the Commissioner's position was not substantially justified. *Cunningham v. Barnhart*, 440 F.3d 862, 865 (7th Cir. 2006). However, the Commissioner's position is not substantially justified when the ALJ's opinion violates well-established precedent or the Commissioner's own regulations. *Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009). Nor is the Commissioner's position substantially justified if the ALJ mischaracterizes or ignores substantial evidence. *Golembiewski v. Barnhart*, 382 F.3d 721, 724-25 (7th Cir. 2004). Strong and unambiguous language pointing out errors in the ALJ's decision constitutes evidence supporting the conclusion that the Commissioner's position was not substantially justified. *Id.* at 725.

The Court remanded this case to the ALJ because she committed four errors in denying Kirsch's disability benefits. The Court now considers whether these

errors warrant a finding that the Commissioner's position was not substantially justified.

## A. Failure to Provide Explanation for Rejecting Part of Dr. Kirinic's Opinion

The Commissioner claims that the Court remanded the case simply because the ALJ failed to sufficiently articulate the bases for the weight she accorded Dr. Kirinic's medical opinion evidence. R. 28 at 6. The Commissioner claims that this is not sufficient to necessitate a finding that her position was not substantially justified. R. 28 at 6, 7. Kirsch argues that a failure to properly articulate a sufficient basis is essentially the same as the ALJ failing to properly analyze and apply the law. R. 32 at 2.

The Seventh Circuit requires an ALJ to build an accurate and logical bridge from the evidence to the ALJ's conclusion. *Steele v. Barnhart,* 290 F.3d 936, 941 (7th Cir. 2002) (citing *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001)). The absence of such bridge prevents a court from engaging in a meaningful review of the ALJ's decision. *Id.* at 596. In other words, where a court cannot determine whether the Commissioner's position is grounded in a reasonable connection between the facts alleged and the legal theory advanced, the court cannot determine whether the Commissioner had a "rational ground for thinking it had a rational ground for its action." *Scott v. Barnhart*, 2003 WL 1524624, at *4 (N.D. Ill. Mar. 21, 2003).

In this case, the ALJ rejected part of Dr. Kirinic's opinion that Kirsch would be unable to return to work without participation in an active pain management program because "such a conclusion was similar to an opinion that the claimant is

'disabled' or 'unable to work.'" R. 24 at 11, 12. The ALJ found Kirsch's need for a pain management program to be an issue reserved for the Commissioner and not a medical opinion offered by Dr. Kirinic. *Id.* at 12. The Court found the ALJ's rejection of this part of Dr. Kirinic's opinion without further explanation to be erroneous. *Id.* The Court reasoned that the ALJ's limited discussion of the evidence supporting her conclusion and failure to minimally explain her dismissal of that evidence failed to build the necessary logical bridge connecting the ALJ's conclusion with the evidence. *Id.* at 12.

The Court concludes that the Commissioner's position was not substantially justified based on the Commissioner's reliance upon the ALJ's decision. Here, the ALJ provided no reason for granting controlling weight to one part of Dr. Kirinic's opinion (Kirsch's capability of sedentary work) while rejecting a condition of that opinion (Kirsch's enrollment in a pain management program necessary for Kirsch to return to work). R. 24 at 12. The ALJ's minimal explanation of her dismissal of such a critical piece of Dr. Kirinic's opinion leaves the Court without the necessary logical bridge connecting the ALJ's conclusion with the hearing evidence. *See Corder v. Massanari*, 2001 WL 1355986, at *2 (N.D. Ill. Nov. 9, 2001) (finding the Commissioner's position not substantially justified where the court could not identify the link between evidence in the record and the ALJ's conclusions); *Hubbard—Davis v. Apfel*, 1998 WL 417595, at *2-3 (N.D. Ill. July 20, 1998) (finding the Commissioner's position not substantially justified where defects in the ALJ's

decision prevented the court of appeals from identifying an adequate and logical bridge from the evidence to the ALJ's conclusion).

## B. Failure to Provide Explanation for Rejecting Part of Dr. Oken's Opinion

The Commissioner again claims that the Court remanded the case simply because the ALJ failed to sufficiently articulate the bases for the weight she accorded Dr. Oken's medical opinion evidence. R. 28 at 3, 4. Kirsch argues that a failure to properly articulate a sufficient basis is essentially the same as the ALJ failing to properly analyze and apply the law. R. 32 at 2, 3.

The ALJ rejected the portions of Dr. Oken's opinion that Kirsch would not be capable of low-stress jobs, that Kirsch could only sit or stand for 10 to 15 minutes at a time for a maximum of two hours a day, that Kirsch would have to take unscheduled breaks during the workday, and that Kirsch would be absent from work more than four days a month due to her impairments. R. 24 at 16. Again, the ALJ failed to fully explain why she rejected these four portions of Dr. Oken's opinion. *Id.* The ALJ's reasoning for rejecting these four portions of Dr. Oken's opinion was that they were inconsistent with Dr. Oken's minimal examination findings and were unsupported by the medical record. *Id.* This Court found the ALJ's rejection of these four parts of Dr. Oken's opinion without further explanation to be erroneous. R. 24 at 17.

The Court again finds that the ALJ failed to build an accurate and logical bridge from the evidence to her conclusion by failing to explain why she rejected portions of Dr. Oken's opinion. As such, the Court finds that the Commissioner's

position cannot be substantially justified because the ALJ's decision does not allow the Court to determine that the Commissioner had an adequate factual basis for denying Kirsch SSI and DIB.

### C. Failure to Apply Factors in 20 C.F.R. § 404.1527(c) and § 416.1527(c) to Dr. Oken's Opinion

After the ALJ declined to give Dr. Oken's opinion controlling weight, she also failed to apply all the factors in 20 C.F.R. § 404.1527(c) and § 416.1527(c) when deciding what evidentiary weight to give Dr. Oken's opinion. R. 24 at 15. Instead, the ALJ simply stated that Dr. Oken's opinion was inconsistent with the medical record and unsupported by Dr. Oken's own minimal examination findings. *Id.* This Court found the ALJ's reasoning conclusory and lacking both a sufficient explanation and application of the factors in 20 C.F.R. § 404.1527(c) and § 416.1527(c). Specifically, the ALJ omitted from her analysis any discussion of the length, nature, and extent of Dr. Oken's treatment relationship with Kirsch. *Id.*; R. 24 at 17.

The Commissioner again argues that the ALJ simply failed to sufficiently articulate her application of the factors in 20 C.F.R. § 404.1527(c) and § 416.1527(c). R. 28 at 3-4. Kirsch claims that the ALJ's failure to analyze the treating physician's opinions as required by the regulations was not merely a failure to properly articulate her applications of the factors in § 404.1527(c) and § 416.1527(c) but, rather, a failure of analysis and proper application of the law. R. 32 at 2.

Evaluating medical source opinions is a fundamental duty of an ALJ. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). As the regulations make clear, an

ALJ should weigh medical opinions and evaluate every opinion received by considering all of the following factors in deciding what weight to give a medical opinion: (1) the examining relationship; (2) the treatment relationship, including length of the treatment relationship, the frequency of examination, and the nature and extent of the treatment relationship; (3) the supportability of medical signs and laboratory findings; (4) the consistency of the opinion; and (5) the physician's specialization on the medical issue. 20 C.F.R. § 404.1527(c). Social Security Ruling 96–2p ("SSR 96–2p")[3] provides instructions for ALJs applying § 404.1527(c) to the facts of an administrative review of a Social Security case by directing an ALJ to weigh the opinion of a treating medical source like Dr. Oken. *See* SSR 96–2p (stating that an ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons of that weight."). When an ALJ decides not to give controlling weight to a treating physician's opinion, he or she must still assign it a specific weight. *Thompkins v. Astrue*, 2011 WL 3325795, at *2 (N.D. Ill. Aug. 2, 2011). SSR 96–2p states that when an ALJ decides what evidentiary weight to give a medical opinion, "treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." SSR 96–2p.

---

[3] A Social Security Regulation is the Social Security Administration's policy interpretation of the Social Security Act. For example, SSR 96—2p provides an explanation of the Social Security Administration's regulations on evaluating medical opinions for treating medical sources and clarifies how the policy is applied to Title II and XVI of the Social Security Act.

The ALJ's failure to consider all of the factors in 20 C.F.R. § 404.1527(c) and § 416.1527(c) in her analysis when deciding the evidentiary weight of Dr. Oken's opinion was erroneous. R. 24 at 15. Furthermore, this Court found that several of the factors omitted by the ALJ in her analysis support the conclusion that Dr. Oken's opinion should have been given greater weight. *Id.* For example, between January 16, 2007, and October 2, 2009, Dr. Oken treated Kirsch 21 times, each time providing detailed and extensive findings in his evaluations. R. 24 at 15. The Court found that Dr. Oken's findings remained relatively consistent throughout the course of his treatment of Kirsch and should have been given more weight. R. 24 at 15-16. We conclude that, as a result of the ALJ's failure to consider these factors, the ALJ failed to build a logical bridge between the evidence and her conclusion upholding the Commissioner's denial of Kirsch's application for SSI and DIB. Thus, the Court cannot conclude that the Commissioner's position was substantially justified. *See Campbell v. Astrue*, 672 F.3d 299, 308 (7th Cir. 2010) (finding the Commissioner's position was not substantially justified because the ALJ failed to analyze the factors set forth in 20 C.F.R. § 404.1527(d) when deciding what weight to afford a treating physician's opinion after the ALJ denied the opinion controlling weight); *Walker v. Astrue*, 2012 WL 527527, at *2-3 (N.D. Ill. Feb. 16, 2012) (finding that the Commissioner's position was not substantially justified where the ALJ failed to properly evaluate the physician's opinion under 20 C.F.R. § 404.1527); *Thompkins*, 2011 WL 3325795, at *2 (finding the Commissioner's position not substantially justified where the ALJ failed to evaluate all the factors of the physician's opinion

in 20 C.F.R. § 404.1527); *Scott v. Barnhart*, 2003 WL 1524624, at *3, *5 (N.D. Ill. Mar. 21, 2003) (finding the Commissioner's position was not substantially justified where the ALJ failed to discuss the evidentiary record in the context of the checklist under 20 C.F.R. § 112.05 because the ALJ left the Court with "grave reservations" as to whether the factual assessment adequately addressed the criteria of the § 112.05 listings).

### D. Failure to Consider Treatment History, Allegations of Pain, and Side Effects When Assessing Kirsch's Credibility

When assessing Kirsch's credibility, the ALJ failed to properly consider Kirsch's treatment history, how Kirsch's treatment history affected Kirsch's alleged pain, and the side effects of Kirsch's medications. R. 24 at 19, 21. The Court found that the ALJ's failure to consider such factors was erroneous because Social Security Ruling 96–7p ("SSR 96–7p") requires an ALJ to consider and analyze such factors as part of building a logical bridge between the evidence and the ALJ's conclusion for credibility determinations. R. 24 at 19-21 (citing SSR 96–7p, 1996 WL 374186, at *3 (July 2, 2006)). Additionally, this Court found that the record was "replete with documentary evidence" demonstrating that Kirsch pursued alternative avenues to treat her back injury and accompanying pain, but none were successful. *Id.* at 20.

Although the Court affords an ALJ's credibility finding "considerable deference," overturning it only if "patently wrong," the ALJ must connect her credibility determination to the record by an "accurate and logical bridge." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006); *Castille v. Astrue*, 617

F.3d 923, 929 (7th Cir. 2010). SSR 96–7p states that in order to build a logical bridge for a credibility determination, the ALJ must consider not only the objective evidence, but also other factors, such as the duration, frequency, and intensity of the claimant's pain and the dosage, effectiveness, and side effects of the medication.

The ALJ did not consider all the factors set forth in SSR 96–7p. R. 24 at 19-21. Instead, the ALJ failed to consider Kirsch's lengthy treatment history, how her treatment history affected her alleged pain, and the side effects of her medications, *Id*. Thus, the Court finds the Commissioner had no substantial justification in her position denying Kirsch SSI and DIB. It is clear that the ALJ violated judicial precedent and the Commissioner's own regulation by failing to build a logical and accurate bridge between the evidence and the ALJ's conclusion. *See* SSR 96–7p, 1996 WL 374186, at *3 (July 2, 1996). The ALJ's decision did not sufficiently discuss and failed to apply the factors for evaluating credibility determinations listed in SSR 96–7p. Instead, the ALJ ignored distinct pieces of evidence, such as Kirsch's attempts at pursuing alternative courses of treatment to her injury and accompanying pain, and the fact that Kirsch's medication made her drowsy which contributed to her inability to function. R. 24 at 20-21. As a result, we conclude the Commissioner had no substantial justification in her position denying Kirsch SSI and DIB in her reliance on the ALJ's decision because the ALJ's failed to properly apply and consider all factors necessary in determining Kirsch's credibility. *See Golembiewski,* 328 F.3d at 724-25 (finding the Commissioner's position was not substantially justified because the ALJ failed to apply the factors set forth in SSR

96–7p and contained no discussion of the credibility of those factors); *Gibson-Jones v. Apfel*, 995 F.Supp. 825, 826-27 (N.D. Ill. 1998) (finding the Commissioner's position was not substantially justified where the ALJ failed to set forth specific legitimate reasons supporting an adverse credibility determination).

This Court's evaluation of the ALJ's failure to explain reasons for rejecting parts of Dr. Kirinic's and Dr. Oken's opinions, failure to apply the factors set forth in 20 C.F.R. § 404.1527(c) and § 416.1527(c) when deciding what evidentiary weight to give Dr. Oken's opinion, and failure to apply the factors set forth in SSR 96–7p in determining Kirsch's credibility indicates that the ALJ's decision was deficient in more than its failure to minimally articulate the basis for the ALJ's conclusion. In the Court's view, the ALJ's decision provided no reasonable way to discern whether the decision had an adequate factual basis and, thus, the Commissioner's position is not substantially justified in relying upon the ALJ's decision.

## II.     Reasonableness of Attorney's Fees

We now turn to the amount of fees that are reasonable to award Kirsch's attorney, Barry A. Shultz ("Shultz"). As a "prevailing party," Kirsch seeks an award of $10,719.37 (at an hourly rate of $184.75) and costs of $15.00. R. 32 at 8.[4] The Commissioner contends that both the number of hours worked and the hourly rate charged are excessive and should be reduced. R. 28 at 5-8. Additionally, the

---

[4] Kirsch initially requested an award for attorney's fees totaling $9,888.33 at an hourly rate of $184.75 and costs of $15.00. R. 25 at 4, 11. Kirsch then amended her award for attorney's fees in her reply brief to $10,719.37 to include her counsel's researching and drafting the reply brief and reviewing of the Commissioner's response brief, the Court's opinion, and Kirsch's initial motion. R. 32 at 8.

Commissioner argues that any fees awarded should be paid to Kirsch and not to Shultz, and should be subject to an administrative offset in the event Kirsch has outstanding federal debts. *Id.* at 8.

Pursuant to the EAJA, an award for "reasonable" attorney fees "shall be based upon prevailing market rates for the kind and quality of the services furnished, except that . . . attorney fees shall not be awarded in excess of $125.00 per hour unless the court determines that an increase in the cost of living justifies a higher fee or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii); *Ibarra-Montufar v. Colvin*, 2013 WL 6507865, at *1 (N.D. Ill. Dec. 12, 2013).

In 2008, the Seventh Circuit recognized that "given the passage of time since the establishment of the [$125] hourly rate [in 1996], a cost of living adjustment is warranted." *Tchemkou v. Mukasey*, 517 F.3d 506, 512 (7th Cir. 2008). To establish a cost of living enhancement, a claimant "must show that inflation has increased the cost of providing adequate legal service to a person seeking relief against the government." *Ibarra,* 2013 WL 6507865, at *1 (quoting *Mathews-Sheets v. Astrue*, 653 F.3d 560, 563 (7th Cir. 2011)). However, the *Mathews-Sheets* court did not describe any particular method or manner by which a lawyer might demonstrate that inflation has increased the cost of legal services to persons seeking redress against the government. *Id.* (quoting *Shipley v. Astrue*, 2012 WL 1898867, at *3 (S.D. Ill. May 23, 2012)).

This absence of guidance has led to numerous interpretations of what a litigant must prove when seeking a cost of living increase under EAJA. A court in this district has evaluated *Mathews-Sheets* as follows:

> *Mathews-Sheets* is best read to require a litigant seeking a cost of living increase under the EAJA to establish two things: (1) that the cost of living in the region has indeed increased to the degree of his requested adjustment, and (2) that his attorney's costs of providing legal services has increased in a manner that tends to show that inflation has indeed raised those costs. Both showings are necessary because general inflation might not raise the particular costs of running a law office, while a particular attorney's increased costs might be attributable to factors other than inflation, such as the attorney's decision to move to a nicer office or to buy more expensive office supplies.

*Ibarra,* 2013 WL 6507865, at *2 (citing *Mireles v. Astrue*, 2012 WL 4853065, at *3 (N.D. Ill. Oct. 11, 2012)). Other courts in this district have reached the same conclusion. *Claiborne ex rel. L.D. v. Astrue*, 877 F.Supp.2d 622, 626-28 (N.D. Ill. 2012); *Booker v. Colvin*, 2013 WL 2147544, at *6 (N.D. Ill. May 16, 2013); *Dewolf v. Astrue*, 2012 WL 3260420, at *2-3 (N.D. Ill. Aug. 8, 2012).

With this standard in mind, the Court turns to the fee request. In this case, Shultz claims his hourly rate should depart from the statutory hourly rate of $125.00 based on increased cost of living. R. 25 at 4-9. Shultz supports his requested hourly rate of $184.75 by attaching cost of living calculations based upon the "all items" portion of the Consumer Price Index—All Urban Consumers ("CPI-U"). R. 28 at 4-5; R. 25-1. The Commissioner contends that the Court should instead use the Consumer Price Index applicable to the Chicago area ("CPI-Chicago"), which would

bring the billable rate to $177.82. R. 28 at 7; R. 28-1 at 1-4. Other district courts in the Seventh Circuit have previously held that the CPI-U is an appropriate index by which to show that the cost of living in this region has indeed increased to the degree of a requested rate adjustment. *See Cobb v. Colvin*, 2013 WL 1787494, at *2 (N.D. Ill. April 25, 2013) (approving fee calculation of $184.75 per hour based on the CPI-U); *see also Bias v. Astrue*, 2013 WL 615804, at *2 (N.D. Ill. Feb. 15, 2013) (approving calculation fee of $181.25 per hours based on the CPI-U "all items" index); *Hamrick v. Astrue*, 2010 WL 3862464, at *3 (N.D. Ind. Sept. 27, 2010) ("[I]t appears that district courts in the Seventh Circuit have permitted the use of either the national or regional index, provided the plaintiff's counsel justifies the increased rate that he seeks."); *Rodriguez v. Colvin*, 2013 WL 5221335, at *3 (N.D. Ill. Sept. 16, 2013) (citing *Griffin v. Astrue*, 2013 WL 616944, at *2 (N.D. Ill. Feb. 15, 2013)(stating that the district court awarded EAJA fees based on the CPI-U and noting that courts within the Seventh Circuit have used both regional and All U.S. Consumer Price Index rates without clear preference for either)).

To satisfy the *Mathews-Sheets* requirement for additional information proving that inflation has increased the attorney's cost of providing legal services, Shultz alleges that he has incurred additional expenses in the form of increases to rent (at least 3% annually), employee salaries (ranging from 3-5% annually), health insurance costs due to increased premiums (at least 100% during the period of this case), legal research tool fees (i.e. Westlaw) and continuing legal education conferences, among other things. R. 25 at 9. Shultz charges an hourly rate of

$280.00 for non-contingency work he handles; however, in 1996 Shultz's non-contingency hourly rate was $180.00—an increase of 52%. *Id.* at 8. The Northern District of Illinois has previously accepted such an increase in non-contingency hourly rate for Social Security cases. *Ibarra*, 2013 WL 6507865, at *2-3. Shultz also provided affidavits from six attorneys licensed to practice in the State of Illinois, all of whom represent clients seeking Social Security disability benefits and all of whom asserted through affidavits that they charge hourly rates ranging from $165 to $550 per hour, which is evidence that has been previously accepted by the Northern District of Illinois when considering whether or not a rate increase is justified. R. 28-4; R. 25-5; R. 25-6; R. 25-7; R. 25-8; R. 25-9; *Ibarra*, 2013 WL 6507865, at *2; *Rodriguez*, 2013 WL 5221335, at *2; *Just v. Astrue*, 2012 WL 2780142, at *2 (N.D. Ill. July 9, 2012). One of the attorneys, who had been practicing law since 1973, testified that he knew of no attorney who would represent a Social Security client in federal court for less than a fully-adjusted for inflation fee under EAJA. R. 25-4 at 2. Finally, Shultz points out that even the Social Security Administration's own fee agreement process ceilings are 50% higher today than they were in 1996. *Id.* at 7. In sum, the evidence offered shows that inflation has increased Shultz's cost of providing legal services.

The Commissioner counters these assertions by arguing that Shultz failed to submit sufficient evidence that his requested rates are in line with those prevailing in the community. R. 28 at 6. The Commissioner also argues that Shultz's reliance on the Commissioner's policy regarding the increase in the Social Security

Administration's own administrative fee agreements lacks merit because the increase was undertaken due to primary insurance amounts and, not as Shultz contends, an increase in the CPI-U. R. 28 at 6-7.

The Court finds Shultz has proffered sufficient evidence to show that inflation has increased the prevailing market rate for legal work compensable under EAJA. District courts have interpreted *Mathews-Sheets* to allow a rate increase upon a showing of both general inflation and higher costs for the lawyer seeking the adjustment. *See Dewolf v. Astrue*, 2012 WL 3260420 at *2-3 (N.D. Ill. Aug. 8, 2012) (granting a rate increase based on the Consumer Price Index increase and the attorney's representations of his own increased costs); *Just*, 2012 WL 2780141, at *2 (stating same and also considering affidavits of other local attorneys attesting to increased costs); *Suess v. Colvin*, 2013 WL 5304094, at *2 (N.D. Ill. Sept. 18, 2013) (noting that other courts within this district have analyzed the same arguments and "have found that similar supporting evidence justifies an inflation adjustment to the EAJA hourly rate."). By demonstrating both the general level of inflation and Shultz's own cost increases during the relevant period, the Court finds Shultz has shown an increased rate is justified. *See Gonzalez v. Astrue*, 2012 WL 1633937, at *2 (S.D. Ind., May 9, 2012) (noting that *Mathews-Sheets* did not "prescribe any particular manner in which a lawyer might demonstrate" that inflation increased the cost of providing adequate legal service).

Shultz has sufficiently supported his assertion that he should be paid an increased rate under EAJA. Additionally, courts in the Seventh Circuit have found

rates similar to that sought by Shultz here to be reasonable where attorneys have shown that inflation has raised their cost of living and their ability to provide legal services in Social Security cases using the CPI-U. *See, e.g., Lopez-Montiel v. Colvin*, 2013 WL 1788429, at *3 (N.D. Ill. April 26, 2013) (holding that an attorney's rate of $182.75 per hour is reasonable); *Cobb*, 2013 WL 1787494, at *2 (approving an hourly rate of $184.75 and using the national Consumer Price Index); *Rodriguez*, 2013 WL 5221335, at *2-3 (holding that an attorney's rate of $182.00 is reasonable); *Bias*, 2013 WL 615804, at *2 (granting attorney's rate of $181.25 per hour under EAJA); *Gonzalez*, 2012 WL 1633937, at *2 (granting attorney's rate up to $180.23 per hour under EAJA). Therefore, the Court finds an hourly rate of $184.75 is reasonable.

The Court also does not find any merit to the Commissioner's next argument—that the amount of time spent on the case was excessive given its "routine" nature and issues which Shultz regularly raises in Social Security cases in this district. R. 28 at 7. The Commissioner asserts that 52.7 hours is an excessive amount of time for Kirsch's attorney to have spent preparing the initial and reply merit briefs. R. 28 at 8. However, the Commissioner does not identify any line item that is excessive. Thus, the amount of hours the Commissioner argues to be "excessive" is an arbitrary speculation as to what the Commissioner believes is reasonable. The Court may not reduce the number of hours absent a clear indication of why such a reduction is necessary. *See Smith v. Great Am. Restaurants, Inc.*, 969 F.2d 430, 439 (7th Cir. 1992). Although each Social Security case requires the same

five-step analysis, as set forth in 20 C.F.R. § 404.1520[5], each case involves unique medical facts and a detailed and labor-intensive study of the administrative record, much like Shultz was tasked with here. *See Suess*, 2013 WL 5304094, at *4. Shultz points out that Kirsch raised numerous legal issues in this case, which required a detailed assessment of 1,951 pages of the administrative record. R. 25 at 6. Thus, the Court does not consider the initial 52.7 hours plus an additional 4.5 hours for Kirsch's reply brief to be excessive based on the lengthy administrative record in this case. *See Verlee v. Colvin*, 2013 WL 6063243, at *9 (N.D. Ind. Nov. 18, 2013) (finding that 36.4 hours spent on an opening brief is "on the high side" but "not so patently unreasonable as to warrant a reduction"); *Garcia v. Colvin*, 2013 WL 1343662, at *2 (N.D. Ind. Apr. 3, 2013) (upholding 61.3 hours spent on claimant's appeal); *Schulten v. Astrue*, 2010 WL 2135474, at *6 (N.D. Ill. May 28, 2010) (noting that 40 to 60 hours for EAJA fee cases is within permissible range).

Finally, the Commissioner argues that any EAJA award should be granted as payable directly to Kirsch, not to her attorney, pending confirmation Kirsch does not owe pre-existing debt to the government. R. 28 at 8-11. Kirsch does not object to this point. As such, the award will initially be made payable but not released to Kirsch, pending confirmation that she owes no pre-existing debt to the government.

---

[5] The Social Security Regulations outline a five-step sequential analysis to determine whether a plaintiff is disabled: (1) is the plaintiff currently unemployed; (2) does the plaintiff have a severe impairment; (3) does the plaintiff have a severe impairment that meets or equals one of the impairments listed as disabling in the Commissioner's regulations; (4) is the plaintiff unable to perform his past relevant work; and (5) is the plaintiff unable to perform any other work in the national economy. 20 C.F.R. § 404.1520; *Simila v. Astrue,* 573 F.3d 503, 512-13 (7th Cir. 2009).

If and when that is confirmed, the total or remainder of the award will become payable by the Social Security Administration to Schultz. *See Bryant v. Comm'r. of Soc. Sec.,* 578 F.3d 443, 448-49 (6th Cir. 2009) (holding that EAJA awards are payable directly to claimants rather than claimant's counsel and awards are subject to administrative set off); *Astrue v. Ratliff,* 560 U.S. 586, 597 (2010) (holding that attorney fee award was subject to offset to satisfy claimant's pre-existing debt to Government).

## CONCLUSION

For the forgoing reasons, the Court grants Kirsch's Motion for Attorney's Fees under EAJA, R. 25, and awards $10,719.37 for Kirsch's attorney's fees and $15.00 in costs.

ENTERED:

Thomas M Durkin ___
Honorable Thomas M. Durkin
United States District Judge

Dated: November 14, 2014